IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

**DAVID STEBBINS**                                    **PLAINTIFF**

**VS.**                          **CASE NO 11-1362**

**MICROSOFT, INC.**                                   **DEFENDANTS**

## EX PARTE MOTION FOR JUDGMENT ON THE PLEADINGS

Comes now, *pro se* Plaintiff David Stebbins, who respectfully submits the following *ex parte* motion for judgment on the pleadings.

### Explanation of *ex parte* status.

At first, you are probably wondering why you should entertain a *ex parte* motion for judgment, when you would think that the defendants should have a right to object to it.

As you may have noticed, I now have a new address from when I first filed this case. See Dkt. 10. The reason for this is because my landlord sued me for the tort of unlawful detainer. They obtained a preliminary writ of possession, ordering me out of the apartment until a final determination could be had. However, as soon as I filed my answer to the non-preliminary portion of the unlawful detainer action, they filed a nonsuit without prejudice. I was not given a chance to object to the nonsuit; I received the motion for nonsuit, and the order granting the motion for nonsuit, all in one envelope (the Arkansas state judiciary does not yet have an ECF system).

I worried if their nonsuit without prejudice would prevent me from being able to obtain a writ of restitution (in Arkansas unlawful detainer actions, a writ of restitution is given to pevailing defendants/tenants, whereby they can get the apartment back), as it was not a final determination.

A few days ago, I called the Judge's office, seeking a status update on my petition for writ

of restitution.  Low an behold, the one who picked up the phone was not the judge's secretary, but the judge himself!

After getting the status update on my petition for writ of restitution, I asked the judge why he did not give me the chance to object to the Plaintiffs' nonsuit.  The judge replied that they have an absolute right to nonsuit the case, and nothing I could say, or that the judge could insert *sua sponte*, could change that.  Although the Judge understood my argument that, if the nonsuit prevented me from getting a writ of restitution that I would otherwise be entitled to if we followed the case to a final conclusion, and I still won, that would prejudice my rights in that respect; the bottom line was, their right to nonsuit the case was 100% absolute.  Therefore, it was pointless to wait for my response.

If you wish to call the Clerk's Office and verify everything that I said, here is the information about the case: The case took place in the Circuit Court of Boone County, AR – Civil Division.  The case was overseen by the Honorable Gordon Webb, and had the case number of 2011-171-4..  I was the Defendant, and the Plaintiffs were Harp & Associates Real Estate Services, LLC.

This is why this motion for judgment on the pleadings is justified as being *ex parte*.  As you will soon find out, no matter what the Defendants can plead, and no matter what they can prove, they are time-barred from challenging the arbitration awards under any circumstances, whatsoever. even if they dispute whether or not an agreement to arbitrate exists!  Therefore, it would be pointless to serve the complaint (Dkt. 2) on the Defendants and have them respond before I file this motion for judgment on the pleadings, so this Court can go ahead and ignore the Defendants' objections.

Of course, that would not matter if I could not demonstrate an absolute and unequivocal

right to have these two arbitration awards confirmed.  Therefore, allow me to move onto the things I would argue if the Defendants had already appeared, and if this were any ordinary motion for judgment on the pleadings:

### Why I am entitled to relief.

The second of the two arbitration awards was obtained, via the forfeit victory clause, on May 26, 2011.  They had three months to move to vacate the arbitration award after that.  See 9 U.S.C. § 12.  Therefore, the final day for the Defendants to move to vacate the arbitration award was August 26, 2011.

Let us assume that the Defendants claim that the arbitration awards should not be confirmed for all reasons which are allowed.  Let us assume that the Defendants deny the following:

1. They never agreed to arbitrate anything with me,
2. Even if they agreed to arbitrate, the award was procured by corruption.
3. The arbitrators (if any there are) were biased against them.
4. The arbitrators were guilty of misconduct.
5. The arbitrators exceeded their powers, and
6. The arbitrators manifestly disregarded the applicable law.

Even assuming that they are not time-barred from challenging the arbitration awards based on the non-existence of an arbitration agreement, they *are* time-barred from challenging the arbitration awards on every other grounds.

> "Of course, if a court later determines that an arbitration agreement was in effect, and that the non-appearing party was bound by its conditions, the FAA would then fully come into operation, including the time limitations of section 12."

See *MCI Telecommunications Corp. v. Exalon Industries, Inc.*, 138 F.3d 426 (1st Cir.

1998).

That First Circuit case law is the leading case on that side of the circuit split (the side that states that the FAA is not triggered until there is an agreement to arbitrate).  Therefore, it is quite persuasive on this issue.

However, even if this Court *wants* to adopt that side of the Circuit Split, it does not have the option of doing so.  Binding precedent in the region has already held that the three month time limit *does* indeed apply, even when the opponent to arbitration is challenging the very existence of an arbitration agreement in the first place.

I cite the case of *MBNA America Bank* v. *Miles,* 140 Wn. App. 511 (2007).  This is from the Court of Appeals of the State of Washington, which is binding on this court in this case.  See *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) (holding that state substantive law is binding on federal courts in diversity cases).

That case is very similar to this one.  Below is a list of bullet points of substantial similarities between that case and this one.

- The parties already had a contract to begin with.
- The Plaintiffs sent the Defendants a notice of unilateral amendment to the contract, which the Defendants supposedly accepted by not canceling the existing contract.
- The unilateral amendment contained an arbitration agreement that was not present in the original contract.
- After the grace period expired, and the Defendant had not canceled the preexisting contract, the Plaintiff initiated arbitration against the Defendant.  The Defendant completely ignored the arbitration, and as a result, the Plaintiff won the arbitration.
- The Plaintiff waited more than three months to move to confirm the arbitration award.

- The Defendants (I'm assuming) responded to the motion to confirm the arbitration award, claiming, in pertinent part, that they never agreed to arbitrate, and thus, the award was procured by "undue means," which is a grounds to vacate under 9 U.S.C. § 10(a)(1).

Despite those conditions, the Washington trial court held that Robert Miles was time-barred from challenging the arbitration award. The Court of Appeals for the State of Washington affirmed. The case went to the Supreme Court of the State of Washington, but no opinion seems to have been published. Therefore, I assume that the case was either settled, or dismissed on a technicality. Therefore, Appellate Court decision is still the law of the land in the State of Washington.

As you can see, the writing is on the wall; the Defendants are unequivocally time-barred from challenging the arbitration award on *any* grounds. No matter what they can say, no matter what they can *prove*, nothing can stop that.

Of course, we need not turn to case law; the statutes themselves show a clear legislative intent that the nonexistence of an arbitration agreement is not supposed to be an exception to the three month time limit.

Notice that I said "statutes," as in... plural. I admit that the Federal Arbitration Act, by itself, does not speak of this issue one way or another. However, when a single statute is vague, its meaning can be ascertained by turning to other statutes of the same subject matter. This doctrine is called *in pari materia*.

The most obvious statute to turn to in this case would be the Uniform Arbitration Act of 2000. Section 23 of the statute deals with vacation of arbitration awards. Section 23(a) deals with the vacation grounds themselves; section 23(b) deals with the time limit within which to file the motion to vacate, and section 23(c) deals with the court ordering new arbitration hearings

after the award has been vacated.

Section 23(a) lists the four grounds that are also listed in the Federal Arbitration Act, with which a party may move to vacate an arbitration award.  However, it also expressly lists "no agreement to arbitrate in the first place" arguments as a fifth grounds.  With the Federal Arbitration Act, we must think of that argument as an "undue means," (like in the *Miles* case) otherwise the case of *Hall Street Associates, L. L. C. v. Mattel, Inc.*, 552 U.S. 576 (2008) would bar the court from finding the nonexistence of an arbitration agreement is even a valid grounds to vacate an arbitration award in the first place!  Courts are not supposed to interpret statutes so as to yield such absurd consequences.  See *Green v. Bock Laundry Machine Co.*, 490 U.S. 504 (1989).

However, with the Uniform Arbitration Act, we do not have to do that.  However, because the Uniform Arbitration Act expressly lists them as separate, we should treat them as separate.  I am unaware of any specific case law or Latin phrase to describe this logic, but I think it holds as a matter of common sense.  Anyway, on with the argument.

Section 23(b) of the Uniform Arbitration Act of 2000 provides for an unequivocal ninety (90) day time frame to move to vacate an arbitration award.  It provides an exception for when the movant is asserting that the award was procured by corruption, fraud, or other undue means, pursuant to Section 23(a)(1), but it does not provide for an extension of time for when the movant is asserting that he never agreed to arbitration in the first place, under Section 23(a)(5).  By contrast, Section 23(c) expressly provides an exception for awards that are vacated pursuant to Section 23(a)(5) of that statute.

At that point, it becomes a matter of *expressio unius est exclusio alterius* ("the express mention of one thing excludes all others").  The drafters of the Uniform Arbitration Act clearly

did not intend for there to be any sort of extension of time to move to vacate an arbitration award if you do not think you have agreed to arbitrate in the first place.

Furthermore, this language was also in the 1955 predecessor to the Uniform Arbitration Act of 2000!  Even assuming that this language was only inserted in the 2000 version of the UAA, Congress still had eleven years to go back in and change the FAA so as to prevent the FAA from being interpreted in such a way, but they have not yet done so.  However, by having the language be in the 1955 version of the UAA, and Congress *still* has not done anything about it, one simply *has* to infer their consent in their silence, under the maxim of *qui tacet consentire videtur* ("he who is silent is taken to agree").

Even if this Court were to insist that the nonexistence of an arbitration agreement is a type of "undue means," notwithstanding the clear intent of the UAA to keep them separate, that still does not help the Defendants.  Section 23(b) states that the time limit applies "unless the movant alleges that the award was procured by corruption, fraud, or other undue means, in which case the motion must be made within 90 days after <u>the ground is known or by the exercise of reasonable care would have been known by the movant</u>."  Underlined for emphasis.

I clearly notified the Defendants of the arbitration initiated against them.  With the exercise of reasonable care, they would have known what was going on.  Granted, I did not send the arbitration to their legal division, but I should not have had to.  You do not have to be a lawyer to recognize a legal document when you see one, even if you do not necessarily understand the contents of the document.

Besides, the FAA does not provide for any kind of extension of time to file a motion to vacate, at all, period.  To infer that any kind of time extension was intended would violate the precedent set by *Hall Street Associates, L. L. C. v. Mattel, Inc.*, 552 U.S. 576 (2008) (holding that

the limited scope of judicial review of an arbitration award cannot be expanded in any way, shape, or form).  To that extent, it flatly *conflicts* with the Uniform Arbitration Act; no *in pari materia* is necessary; the FAA simply preempts the UAA in this case.

Previously, I mentioned that it would be absurd to hold that the nonexistence of an arbitration agreement is not a grounds to vacate an arbitration award under the FAA.  However, it is *not* absurd to expect a person aggrieved by an arbitration to which they did not agree to be the aggressor and move to vacate it, and to do so in a timely manner.  In fact, is that not why we have statutes of limitations in the first place?  I am not talking about a statute of limitations in the FAA; I am talking about statutes of limitations generally.  It is perfectly compliant with fundamental societal values to expect a person wrongfully injured to be the aggressor and take it to court, themselves, is it not?

Wherefore, premises considered, I respectfully pray that the arbitration awards be confirmed.

/s/ David Stebbins
David Stebbins
8527 Hopewell Rd,
Harrison, AR 72601
870-743-4386
stebbinsd@yahoo.com