IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

DAVID STEBBINS                                              PLAINTIFF

VS.                               CASE NO 11-1362

MICROSOFT CORPORATION                                       DEFENDANTS

## MOTION FOR JUDGMENT ON THE PLEADINGS

NOTE ON MOTION CALENDAR:  Nov. 25, 2011

Comes now, *pro se* Plaintiff David Stebbins, who respectfully submits the following motion for judgment on the pleadings.

Before I begin, I know what this Court is thinking:  The Defendant has not filed a responsive pleading, only a motion to dismiss; therefore, a motion for judgment on the pleadings is improper.  However, the truth of the matter is that, procedurally speaking, Defendant's motion to dismiss is in fact a response in opposition to the Motion to Confirm the Arbitration Award (Dkt. 2).  The United States Supreme Court has held in *obiter dicta* that a motion to confirm, vacate, or modify an arbitration award should be given streamlined treatment as a motion, rather than a full contract action.[1]

Even though *dicta* may not be binding on this court[2], the spirit behind the dicta is.  The spirit of arbitration is that it is cheaper and quicker than litigation.  To go through the time, trouble, and expense of a full contract action simply to confirm the award would defeat the core purpose of arbitration, as it merely adds to the cost of litigation, rather than replaces it.

Therefore, procedurally speaking, Dkt. 2 was in fact a *motion* to confirm two arbitration awards.  Defendant's "Motion to Dismiss" was in fact a Response in Opposition to the Motion to Confirm Arbitration Awards, and this Motion for Judgment on the Pleadings should be construed

---

1  *Hall Street Associates, L. L. C. v. Mattel, Inc.*, 552 U.S. 576 (2008)
2  *Central Green Co. v. United States*, 531 U.S. 425 (2001)

as a Reply Suggestion to the Motion to Confirm the Arbitration Awards.  If Defendant wishes to file a Response in Opposition to this Motion, it should be construed by the Court as a surreply.

## BACKGROUND

Defendant and I are engaged in a consumer-based contract for the use of Defendant's online video game service called Xbox Live, for the Xbox 360 video game console, to which the Defendant also owns the intellectual property rights.

On May 6, 2011, I submitted to Defendant a notice.  This notice stated that I was unilaterally amending the Xbox Live Terms of Use, just as Defendant and other major corporations just like Defendant have done to consumers just like me on numerous occasions.

The unilateral amendment took effect after ten (10) days, on the date of May 16, 2011.  To reject the unilateral amendment, the Defendant should have terminated my account within that time frame, again, just like how the Defendant and other major corporations often require consumers to do to reject their unilateral amendments.

My unilateral amendment contained an arbitration clause, requiring all legal disputes between Defendant and myself, even those not related to the Xbox Live Terms of Use, to be submitted to binding arbitration, using the services of [www.net-arb.com](www.net-arb.com), the American Arbitration Association, or the National Arbitration Forum.

My unilateral amendment also contained a "forfeit victory clause," which states that, if they do not accept my arbitration invitation within twenty-four (24) hours of receiving it, I automatically win, without having to prove anything, and without the arbitration firm ever even being any the wiser.  In this case, the arbitration invitation which was ignored by Defendant, coupled with the forfeit victory clause, constituted the "arbitration award" as required by 9 U.S.C. § 13(b).

Defendant did not cancel my account within the allotted ten-day time limit.

On May 18, 2011, I submitted an invitation to the Defendant to arbitrate a legal dispute over $500,000,000,000 in damages. Defendant ignored the arbitration invitation.

On May 24, 2011, I submitted an invitation to the Defendant to arbitrate a legal dispute over $1,000,000,000,000 in damages. Defendant ignored that arbitration as well.

No motion to vacate or modify the arbitration award has yet been filed, in this case or in any other.

On October 11, 2011, Defendant was served with a summons and complaint to confirm the two arbitration awards. Therefore, this Court now has personal jurisdiction over them.

On November 1, 2011, Defendant submitted a Motion to Dismiss (which was in fact a Response in Opposition to the Motion to Confirm the Arbitration Award), alleging that the complaint was frivolous because (1) they never assented to the unilateral amendment submitted to them on May 6, 2011, (2) no arbitration ever took place, and (3) no arbitration award was ever entered in my favor.

## UNIFORM ARBITRATION ACT

The Uniform Arbitration Act of 2000 will be cited extensively in this case. Here is a non-exhaustive list of reasons why this is being done:

1. The FAA is quite vague on a number of issues. When a statute is ambiguous, its meaning can be ascertained by turning to other statutes of the same subject matter. This is called "*in pari materia*." In this case, the most obvious statute to turn to would be the Uniform Arbitration Act of 2000.

2. The UAA addresses every single solitary thing that the FAA addresses, but also addresses many more scenarios that the FAA does not address. Therefore, the UAA is very favored

    to use as legal authority, for much the same reason why most people simply use driver's licenses as their primary method of photographic identification, in lieu of a state I.D.

3. This is a diversity action, as the Federal Arbitration Act does not confer federal question jurisdiction.[3] Therefore, state substantive law applies.[4]

4. Even without the Erie Doctrine, the Federal Supremacy Clause of the United States Constitution only applies whenever there is an actual *conflict* between federal and state law. In the absence of such a conflict, state law should still be accommodated if at all possible. This is true for all laws, not just arbitration.

Therefore, if it is not too much of an inconvenience to the Court, the UAA will be cited extensively. Of course, the Federal Arbitration Act is still directly binding on this case; therefore, in the event that the Federal Arbitration Act *does* comment on an issue (and also, in the rare event that the FAA will actually conflict with, and thus preempt, the UAA), the FAA will be cited instead. The UAA will only be cited to fill the blank spots that the FAA and its corresponding case law do not yet address.

## DISCUSSION

For the following non-exhaustive list of reasons, I am entitled to judgment as a matter of law.

### Things that are admitted by default.

Because an action to confirm an arbitration award requires streamlined consideration as a motion, rather than a full contract action, Defendant's Motion to Dismiss is still subject to the provisions of Fed. R. Civ. P. Rule 8(b)(6), which states that all matters are admitted if a responsive pleading is required and the matter is not denied.

---

3  *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U. S. 1, 25, n. 32 (1983)
4  *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)

Defendant never said anything that could even theoretically be construed as a general denial.  Therefore, Defendant has admitted by default that the essential contract elements of offer, meeting of the minds, competent parties, subject-matter, and mutuality of obligation are all present.  They have admitted by default that none of the grounds for vacating an arbitration award expressly provided by 9 U.S.C. § 10(a) are present, nor are any of the grounds for modification of an arbitration award under 9 U.S.C. § 11.

Due to Defendant's mistaken belief that the motion to dismiss would preempt its requirement to provide an exhaustive arsenal of denials and defenses (which, to be fair, it generally *does* preempt this requirement, but not in this case), Defendant has relied entirely on only three defenses:  (1) They never assented to the arbitration agreement and forfeit victory clause, (2) the unilateral amendment lacks consideration, and (3) no arbitration award was ever obtained (this basically amounts to a challenge to the validity and enforceability of the forfeit victory clause and a challenge to the arbitration awards on the basis of their form).

**Defendants are time-barred from challenging the awards on <u>any</u> grounds.**

Defendant's defenses to the confirmation of the arbitration award fall into two broad categories:  The nonexistence and/or unenforceability of the arbitration agreement, and the validity and enforceability (or lack thereof) of the forfeit victory clause.

The second of the two arbitration awards was obtained, via the forfeit victory clause, on May 25, 2011.  They had three months to move to vacate the arbitration award after that.[5]  The three month time limit began on May 26, 2011.[6]  Therefore, the final day for the Defendants to move to vacate the arbitration award was August 26, 2011.

Even assuming that they are not time-barred from challenging the arbitration awards

---

5   9 U.S.C. § 12
6   Fed. R. Civ. P. Rule 6(a)(1)

based on the non-existence of an arbitration agreement, they *are* time-barred from challenging the arbitration awards on absolutely any other grounds, including the enforceability (or lack thereof) of the forfeit victory clause, and the form the arbitration awards take.

> "Of course, if a court later determines that an arbitration agreement was in effect, and that the non-appearing party was bound by its conditions, the FAA would then fully come into operation, including the time limitations of section 12."[7]

That First Circuit case law is the leading case on that side of the circuit split (the side that states that the FAA is not triggered until there is an agreement to arbitrate). Therefore, it is quite persuasive on this issue.

However, even if this Court wants to adopt that side of the Circuit Split, it does not have the option of doing so. Binding precedent in the region has already held that the three month time limit does indeed apply, even when the opponent to arbitration is challenging the very existence of an arbitration agreement in the first place.

I cite the case of *MBNA America Bank* v. *Miles*.[8] This is from the Court of Appeals of the State of Washington, which is binding on this court in this case, via the Erie Doctrine.

That case is very similar to this one. The parties already had a consumer-based contract to begin with. The Plaintiffs sent the Defendants a notice of unilateral amendment to the contract, which the Defendants supposedly accepted by not canceling the existing contract. The unilateral amendment contained an arbitration agreement that was not present in the original contract. After the grace period expired, and the Defendant had not canceled the preexisting contract, the Plaintiff initiated arbitration against the Defendant. The Defendant completely ignored the arbitration, and as a result, the Plaintiff won the arbitration. The Plaintiff waited more than three months to move to confirm the arbitration award. The Defendants responded to

---

[7] *MCI Telecommunications Corp. v. Exalon Industries, Inc.*, 138 F.3d 426 (1st Cir. 1998)
[8] 140 Wn. App. 511 (2007)

the motion to confirm the arbitration award, claiming, in pertinent part, that they never agreed to arbitrate, and thus, the award was procured by "undue means," which is a grounds to vacate under 9 U.S.C. § 10(a)(1).

Despite those conditions, the Washington trial court held that Robert Miles was time-barred from challenging the arbitration award. The Court of Appeals for the State of Washington affirmed. The case went to the Supreme Court of the State of Washington, but they refused to hear the case at all; therefore, the Appellate Court decision is still the law of the land in the State of Washington.

As you can see, the writing is on the wall; the Defendants are unequivocally time-barred from challenging the arbitration award on any grounds at all. No matter what they can say, no matter what they can *prove*, nothing can stop that.

Of course, we need not turn to case law; the statutes themselves show a clear legislative intent that the nonexistence of an arbitration agreement is not supposed to be an exception to the three month time limit. Notice that I said "statutes," as in plural. It is at this point that I will begin my extensive citation of the Uniform Arbitration Act of 2000.

Section 23 of the statute deals with vacation of arbitration awards.[9] Section 23(a) deals with the vacation grounds themselves;[10] section 23(b) deals with the time limit within which to file the motion to vacate,[11] and section 23(c) deals with the court ordering new arbitration hearings after the award has been vacated.[12]

Section 23(a) lists the four grounds that are also listed in the Federal Arbitration Act, with which a party may move to vacate an arbitration award. However, it also expressly lists "no

---

9   RCW 7.04A.230
10  RCW 7.04A.230(1)
11  RCW 7.04A.230(2)
12  RCW 7.04A.230(3)

agreement to arbitrate in the first place" arguments as a fifth grounds.[13] With the Federal Arbitration Act, we must think of that argument as an "undue means," (like in the *Miles* case) otherwise the case of *Hall Street Associates, L. L. C. v. Mattel, Inc.*, 552 U.S. 576 (2008) would bar the court from finding the nonexistence of an arbitration agreement to even be a valid grounds to vacate an arbitration award in the first place!  Courts are not supposed to interpret statutes so as to yield such absurd consequences.[14]

However, with the Uniform Arbitration Act, we do not have to do that.  However, because the Uniform Arbitration Act expressly lists them as separate, we should treat them as separate.  I am unaware of any specific case law or Latin phrase to describe this logic, but I think it holds as a matter of common sense.  Anyway, on with the argument.

Section 23(b) of the Uniform Arbitration Act of 2000 provides for an unequivocal ninety (90) day time frame to move to vacate an arbitration award.[15]  It provides an exception for when the movant is asserting that the award was procured by corruption, fraud, or other undue means, pursuant to Section 23(a)(1), but it does not provide for an extension of time for when the movant is asserting that he never agreed to arbitration in the first place, under Section 23(a)(5). By contrast, Section 23(c) <u>does</u> expressly provides an exception for awards that are vacated pursuant to Section 23(a)(5) of that statute.

At that point, it becomes a matter of *expressio unius est exclusio alterius* ("the express mention of one thing excludes all others").  The drafters of the Uniform Arbitration Act clearly did not intend for there to be any sort of extension of time to move to vacate an arbitration award if you do not think you have agreed to arbitrate in the first place.

Furthermore, this language was also in the 1955 predecessor to the Uniform Arbitration

---

13  RCW 7.04A.230(1)(e)
14  *Green v. Bock Laundry Machine Co.*, 490 U.S. 504 (1989)
15  RCW 7.04A.230(2)

Act of 2000.  Even assuming that this language was only inserted in the 2000 version of the UAA, Congress still had eleven years to go back in and change the FAA so as to prevent the FAA from being interpreted in such a way, but they have not yet done so.  However, by having the language be in the 1955 version of the UAA, and Congress *still* has not done anything about it, one simply has to infer their consent in their silence, under the maxim of *qui tacet consentire videtur* ("he who is silent is taken to agree").

Even if this Court were to insist that the nonexistence of an arbitration agreement is a type of "undue means," notwithstanding the clear intent of the UAA to keep them separate, that still does not help the Defendants.  Section 23(b) states that the time limit applies "unless the movant alleges that the award was procured by corruption, fraud, or other undue means, in which case the motion must be made within 90 days after <u>the ground is known or by the exercise of reasonable care would have been known by the movant</u>."[16]  Underlined for emphasis.

I clearly notified the Defendants of the arbitration initiated against them.  With the exercise of reasonable care, they would have known what was going on.  Granted, I did not send the arbitration to their legal division, but I should not have had to.  You do not have to be a lawyer to recognize a legal document when you see one, even if you do not necessarily understand the contents of the document.

Besides, the FAA does not provide for any kind of extension of time to file a motion to vacate, at all, period.  To infer that any kind of time extension was intended would violate the precedent set by *Hall Street Associates, L. L. C. v. Mattel, Inc.*, 552 U.S. 576 (2008) (holding that the limited scope of judicial review of an arbitration award is absolutely rigid and cannot be expanded in any way, shape, or form).  To that extent, it flatly *conflicts* with the Uniform Arbitration Act.  No *in pari materia* is necessary; the FAA simply preempts the UAA in this case.

---

16  Id.

Previously, I mentioned that it would be absurd to hold that the nonexistence of an arbitration agreement is not a grounds to vacate an arbitration award under the FAA. However, it is *not* absurd to expect a person aggrieved by an arbitration to which they did not agree to be the aggressor and move to vacate it, and to do so in a timely manner. To the contrary, that is exactly what U.A.A. § 7(b) states that the Defendants in this case are supposed to do.

In fact, is that not why we have statutes of limitations in the first place? I am not talking about a statute of limitations in the FAA and UAA; I am talking about statutes of limitations generally. It is perfectly compliant with fundamental societal values to expect a person wrongfully injured to be the aggressor and take it to court, themselves, is it not?

In the event that my argument of them being time-barred fails, the arbitration award should still be confirmed.

### Arbitration is not the only public policy in question in this case.

In the Defendant's Suggestion in Opposition to this Motion, the Defendant is likely to argue what the First Circuit has held: That the FAA is not triggered until there is an agreement to arbitrate.

Even notwithstanding the *Miles* case, binding this Court to rule in the exact opposite way, to argue this would still be a straw man on the part of the Defendant.

I fully and completely understand that the strong federal policy favoring arbitration is not triggered until there is an agreement to arbitrate. I get it. I concede to that.

However, this Court should not not consider *just* the federal policy favoring arbitration. It should also consider the equally compelling governmental policy that guides the statute of limitations, the equitable doctrine of laches, and the Latin legal maxim *qui tacet consentire videtur*. It is *this* policy, not the policy favoring arbitration, upon which I base this legal

argument, and it is this policy, not the policy favoring arbitration, that the Court should consider when passing judgment on this legal argument.

This policy against victims procrastinating on enforcing their legal rights trumps many different governmental policies. For example, the federal government has a strong policy against discrimination, so much so that they will attempt to abrogate state sovereign immunity from suits against it![17] However, those who have been discriminated against have an extremely narrow 180-day time limit to file their claims with the appropriate investigative agency, such as the EEOC.

The federal government has a strong policy favoring sovereign immunity unless it is properly abrogated or waived, but even that can be forfeited by the sovereign defendant if they do not raise the defense in the first instance, in either an answer or a motion to dismiss; this is an application of the doctrine of *qui tacet consentire videtur*.

As you can see, almost every governmental policy, however compelling, can be trumped by the statute of limitations. The only exceptions that come to mind are treason and murder in the first degree. Even other extremely heinous crimes, such as rape, have a statute of limitations, the successful invoking of which will trump the strong governmental policy against the act. Rape! An act as vile as *rape* is trumped by the policy favoring swift legal action!

In conclusion, even assuming that this Court is not bound by the *Miles* case (which it is), I ask that this Court not limit its focus in this case to *just* the policy favoring arbitration, as the First Circuit and its followers seem to have done. By focusing on just arbitration policy, those courts have missed the big picture. I humbly ask that this Court not make that same mistake.

**Defendants have filed no motion to vacate.**

Defendants have filed no motion to vacate the arbitration award. 9 U.S.C. § 9 flatly states

---

17  42 U.S.C. Sec. 2000d-7

that a court unequivocally *must* grant a motion to confirm an arbitration unless it is fought with a motion to vacate.[18]  There is nothing malleable about "must grant," and § 9 carries no hint of flexibility in this regard.[19]

If a confirmation proceeding is initiated after the time to challenge the award has run, defenses that could have been raised in such a challenge are time-barred.[20] [21]

Therefore, the only things that could possibly be entertained as mere passive defenses to a motion to confirm an arbitration award, as opposed to active motions to vacate, are challenges to the *motion* to confirm the arbitration award, rather than to the award itself, such as (1) the Court lacks jurisdiction over the subject matter (e.g. diversity jurisdiction), or the person, (2) the arbitration award was obtained more than one year before the motion to confirm it was filed, (3) the motion to confirm the arbitration award was insufficiently served on the adverse party, or (4) an independent motion to vacate or modify the arbitration award either has been granted by, or is still pending in, a court of competent jurisdiction.

Other than that, it must be raised in a motion to vacate.

The case of *MBNA America Bank v. Miles*[22] clearly shows that the nonexistence of an arbitration agreement is a type of "undue means," which is a grounds to vacate the arbitration award under 9 U.S.C. § 10(a)(1).  Therefore, because it is *possible* to raise this issue in a motion to vacate, the Defendants should have done so in a motion to vacate.  Because they have failed to do so, they should loose, automatically, just on that procedural blunder.

**Defendant has not alleged that the award was obtained by undue means.**

Under the FAA (as opposed to the UAA), if there was no agreement to arbitrate, that

---

18  9 U.S.C. § 9
19  *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576 (2008)
20  Wallace v. Butter, 378 F.3d 182, 197-98 (2d Cir. 2004)
21  Sheet Metal Workers Int'l Ass'n Local Union No. 36 v. Systemaire, Inc., 241 F.3d 972, 975 (8th Cir. 2001)
22  140 Wn. App. 511 (2007)

means that the arbitration award was obtained by undue means.  See *MBNA America Bank v. Miles*.  Defendant denies the existence of an arbitration agreement.  However, they do not allege that the arbitration awards were obtained by undue means.

By not raising the defense that the arbitration award was obtained by undue means, Defendant has forfeited that right.  Therefore, Defendant cannot, as a matter of procedural law, succeed on a claim of the nonexistence of an arbitration agreement.  In the case of *American Association of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104 (9th Cir. 2000), the United States Court of Appeals for the Ninth Circuit held that, as a matter of procedural law, when a defense is waived by not raising it, any other defenses that *are* raised that necessarily imply the waived defense must fail.

In that exact case, they held that moving to vacate a default judgment on the grounds of insufficient service of process, but not raising lack of personal jurisdiction, caused the argument to fail.  However, the legal *logic* still applies in this case.

Therefore, assuming that all previous arguments raised in this motion fail, Defendant's argument of the nonexistence of an arbitration agreement should fail just on that reason alone.

Defendant should also fail on its claims that no arbitration award was ever issued in my favor, due to the fact that they never asserted the Defense that the arbitrator imperfectly executed its powers, that the arbitration award was imperfect in form, or that the arbitration award was obtained by undue means (e.g. the forfeit victory clause).

### The arbitrator must decide the validity of the forfeit victory clause.

Defendants challenge the existence of an arbitration and an arbitration award.  There in fact is an arbitration award, just in an unorthodox format.  The arbitration invitations, coupled with the forfeit victory clause, stand in as the arbitration awards as required by 9 U.S.C. § 13(b).

Therefore, Defendant's challenge to the existence of an arbitration award is essentially a challenge to the validity and enforceability of the forfeit victory clause.

Even assuming that the Defendants are not time-barred from challenging the awards on those grounds, the bottom line is that the arbitrator, not the Court, must decide the validity and enforceability of the forfeit victory clause.  The forfeit victory clause essentially amounts to a change in arbitration procedure, and the arbitrator decides arbitration procedure.[23]

### Defendant holds the burden of proof.

It is well established in arbitration law that a party attempting to overturn an arbitration award, not the party attempting to sustain it, holds the burden of proof.[24]

While neither the State of Washington, nor the United States Court of Appeals for the Ninth Circuit, nor the United States Supreme Court, has declared which party holds the burden of proof in a dispute as to the very existence of an arbitration agreement in an action to confirm the award, that does not mean that the Court can just decide whatever it wants.  Whenever substantive law is silent on an issue, the Court must engage in what is called an "Erie Guess" to anticipate what the State of Washington's decision would be.  For the reasons outlined below, this Court should anticipate that the State of Washington would place the burden of proof on Microsoft in this case:

1. The case of *MBNA America Bank v. Miles* demonstrates a clear intent on the part of the State of Washington to require the opponent to arbitration to be the aggressor on his motion to vacate, even in the presence of a dispute as to the very existence of an arbitration agreement.  It stands to reason, flowing from that precedent, that those same aggressors should also bear the burden of proof.

---

23  RCW 7.04A.150(1)
24  Hanson v. Shim, 87 Wn. App. 538, 546, 943 P.2d 322 (1997)

2. U.A.A. § 23 lists the "nonexistence of an arbitration agreement" issue as a grounds to vacate, but aside from forbidding the court from ordering additional arbitration hearings in § 23(c), the statute gives no language whatsoever that even remotely suggests that motions to vacate under § 23(a)(5) are to be treated any differently by the Court than the other grounds to vacate, and that includes the burden of proof.

Therefore, Defendant Microsoft Corporation holds the burden of proving that there is no agreement to arbitrate.

In this case, the Defendants have claimed a lot, but have proven nothing. They never even attached any exhibits, not even an affidavit.

Therefore, the arbitration awards should be confirmed simply due to their failure to prove a lack of an agreement to arbitrate.

**The forfeit victory clause is perfectly compliant with arbitration policy.**

Even assuming that this Court has subject-matter jurisdiction to decide the validity and enforceability of the forfeit victory clause, even assuming that the challenge is not time-barred, and even assuming that I hold the burden of proof on this issue, that still does not help the Defendant. Section 19(a) of the Uniform Arbitration Act of 2000 does, indeed, require that an arbitration award be in writing and signed by the arbitrators joining in the award.[25] However, Section 4 of that same statute provides an exhaustive list of provisions of the UAA that cannot be waived.[26] In Section 4, however, Section 19 is nowhere to be found. Sections 18 and 20 are both listed in the list of nonwaivable provisions, but Section 19 is not. Therefore, the doctrine of *expressio unius est exclusio alterius* ("the express mention of one thing excludes all others") unequivocally states that the drafters of the UAA – the drafters of the statute that this Court

---

25  RCW 7.04A.190(1)
26  RCW 7.04A.040

should turn to for guidance on interpreting the FAA – intended for parties to be allowed to waive the requirement that the arbitration award be in writing and signed by the arbitrators joining in the award.

Besides, the Federal Arbitration Act (which is directly applicable in this case and preempts the UAA in the event of a conflict) has no such requirement of the arbitration award's form. To assume such a requirement would violate the precedent set forth in *Hall Street Associates, LLC v. Mattel, Inc*.

Speaking of which, that is another good point. Even assuming that the Court has subject-matter jurisdiction to decide the validity and enforceability of the forfeit victory clause, and that the challenge is not time-barred, that is still not a grounds to vacate an arbitration award. Remember, the grounds upon which an arbitral award can be vacated or modified are absolutely exclusive and cannot be expanded upon in any way, shape, or form.[27]

A challenge to the validity and enforceability of the forfeit victory clause essentially amounts to a challenge to the arbitration awards on the basis of their form. An arbitration award can be modified – but not vacated in its entirety – if the arbitration award is imperfect in form, but only if the imperfection has nothing to do with the merits of the case.[28] Even then, modification of the arbitration award can only go as far as to correct the imperfection of form, meaning that the only thing the Court can do in that event is draft an arbitration award reflecting the relief I should have obtained in the first place from the forfeit victory clause, and then confirm that award.

If you really want to stretch it, you could argue that the forfeit victory clause could cause the arbitration awards to be vacated on the grounds that the arbitrator imperfectly executed his

---

27 *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576 (2008)
28 9 U.S.C. § 11(c)

powers (in that he never really exercised them at all), which is a grounds to vacate a arbitration award under 9 U.S.C. § 10(a)(4). However, even that does not help the Defendant in this case. In order to vacate an arbitration award on that ground, an imperfect execution of arbitral powers is only one of two elements to be established. The other is that, as a result of the imperfect execution of powers, a final and definite award upon the subject matter was not made.[29]

In this case, there is no ambiguity in the relief that I am now entitled. Therefore, as a result, even that grounds to vacate fails.

**Assent is established by their continued use of the Xbox Live contract.**

The Defendants rely heavily on the fact that they never assented to the unilateral amendment. They seem to forget the political message that I am trying to send in this case. Major corporations just like Defendant routinely "unilaterally modify" consumer contracts in exactly the same way that I am doing, in this case. The case of *MBNA America Bank v. Miles* is a prime example of corporations just like Microsoft doing exactly that.

Defendant has failed to articulate a single solitary difference between what I am doing and what corporations just like Defendant do on a regular basis. Defendant claims that my case is frivolous, but it is their argument which is frivolous.

Aside from the fact that Defendant is a hypocrite in its frivolous argument that assent absolutely, without exception, *must* be expressive, rather than implied in their silence, the United States Court of Appeals for the Ninth Circuit has held the exact opposite in the case of *Douglas v. Talk America, Inc.* (Case No. No. 06-75424).

> "*Crawford* v. *Talk America, Inc.*, and *Bischoff* v. *DirecTV, Inc.*, on which the district court relied, are not to the contrary. The customers in these cases received notice of the modified contract by mail. The service provider in *Bischoff* mailed the contract to the customer, and the service provider in *Crawford* gave notice to

---

[29] 9 U.S.C. § 10(a)(4), ("where the arbitrators exceeded their powers, or so imperfectly executed them <u>that a mutual, final, and definite award upon the subject matter submitted was not made</u>.")

the customer that she could see the contract terms online or call the service provider to learn of the terms."

See *id* (internal citations omitted).

As you can clearly see, the Ninth Circuit has unequivocally stated that unilateral amendments *can* be assented to by silence rather than positive expressive acceptance.

Of course, if you need further proof that silence can, in the right circumstances, signify acceptance to a contract, you need look no further than the Restatement (Second) of Contracts, § 69. This section outlines several different ways in which silence can signify acceptance.

If you go off the RSC, the unilateral amendment in this case was accepted by Defendant by way of R.S.C. § 69(1)(c), which states that a contract can be accepted by silence "where because of previous dealings or otherwise, it is reasonable that the offeree should notify the offeror if he does not intend to accept."

In this case, there are circumstances that make it reasonable that Defendant should have notified me that it did not intend to accept. Specifically, I am referring to the Defendant's Xbox Live Terms of Use, which Defendant itself drafted, which allowed for unilateral modifications of the Terms of Use. You can be taken to these Terms by following this link: http://www.xbox.com/en-US/legal/livetou

You can see at the very beginning that this contract was last updated in July 2011. This was not the firs time that Defendant has modified its contract like that, and it probably will not be the last.

However, there is no section in this clause that allows them to unilaterally modify the contract in such a way. Paragraph #17 allows Defendant to change the *service*, but not the Terms of Use.

Even assuming that the Terms of Service granted Defendant the right to unilaterally

modify the terms of service, for Defendant to argue that the contract does not extend that same right to me would be unconscionable.

It is one thing for Microsoft to have sufficient bargaining power that they can reject with impunity any contract offers that I submit to them. However, to contractually forbid me from even *attempting* it in the first place, while still reserving that right to them, is plainly unconscionable, and also causes the contract to lack mutuality of obligation. Therefore, a contractual obligation interpreted in such a way should not be enforceable as a matter of public policy.

### No consideration is needed in this case.

Defendant also alleges that they received nothing as consideration for this unilateral modification of the Xbox Live Terms of Use. ("particularly given that Microsoft neither obtained nor retained any benefit from Mr. Stebbins's 'offer.'") This, however, is just as frivolous as the rest of Defendant's arguments. "An agreement modifying a contract... needs no consideration to be binding."[30] Defendant should be sanctioned for raising a legal argument that the statute clearly bars.

### Conclusion.

The writing is on the wall. My case has many different levels of cushion.

Wherefore, premises considered, I respectfully pray that the arbitration awards be confirmed.

_David Stebbins_
David Stebbins
8527 Hopewell Rd,
Harrison, AR 72601
870-743-4386
stebbinsd@yahoo.com

---

30  RCW 62A.2-209