UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

DAVID STEBBINS                                                                PLAINTIFF

VS.                                       CASE NO. 11-1362

MICROSOFT CORPORATION                                            DEFENDANTS

REPLY SUGGESTION TO MOTION FOR SANCTIONS

Comes now, *pro se* Plaintiff David Stebbins, who respectfully submits the following reply suggestion to [18] Motion for Sanctions, and [22] Motion for Sanctions or in the Alternative for Clarification.

**Second Motion for Sanctions is Admitted by Default.**

Defendant has offered only one thing in its respond (Dkt. 26) that even remotely resembles a response to the motions for sanctions, and that is... establishing what Defendant believes is a difference between my unilateral amendment to the Xbox Live Terms of Use, and Defendant's unilateral amendment to the Xbox Live Terms of Use.

Defendant has commented on nothing regarding the argument raised in my second motion for sanctions. Namely, Defendant has not commented on my argument that it is a frivolous argument to mention that I am a vexatious litigant, simply because of the *quantity* of lawsuits that I have filed, rather than each case's individual quality.

Because Defendant has not responded to the substance of this issue, it is admitted by default, under CR 7(b)(2), ("If a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit").

I might think that Defendant might oppose the motion at a later time, but Defendant clearly stated that it was making a blanket response.

Therefore, the Second Motion for Sanctions should be granted, simply for Defendant's

failure to oppose it.

Defendant, however, *has* opposed my motion for sanctions, arguing that it is frivolous to argue against me doing the same thing that Defendant often does to its customers.

**Defendant's "grind to a hault" argument is not the difference I requested.**

I asked for a *difference*.  Defendant has failed to provide that.  Defendant argues in part "It could not be any other way: if subscribers could unilaterally change contract terms, service to **all** subscribers would grind to a halt as Microsoft sorted through millions of contracts with terms unique to each subscriber."

First of all, Defendant can claim claim claim, until the cows come home.  However, as I mentioned in my motion for judgment on the pleadings, Defendant holds the burden of proof.  Defendant has not proven that allowing consumers to engage in the same unilateral modification practices that Defendant itself routinely engages in would cause commerce to "grind to a halt."  Again, Defendant has claimed a lot, but has proven nothing.

Secondly, this argument fails to provide the *difference* that I requested.  Defendant fails to acknowledge the fact that consumers are already (not merely at risk of being, but they already are) each faced with scores, perhaps even hundreds, of consumer contracts, employment contracts, and many other contracts, in which corporations just like Defendant routinely unilaterally amend the terms of those contracts.  These amendments are extremely burdensome and time-consuming, and very very *very* few people actually have enough hours in the day to painstakingly read them all, yet are still expected to do so, as a matter of law.  Furthermore, unlike Defendant, consumers do not have hundreds (if not thousands) of full-time employees whose sole job description is to read and respond to issues such as this; they have to do it all themselves.

Despite this, consumerism has not "ground to a halt," like Defendant fears, despite consumers often being subject to the exact same thing that is the central issue, here.

Rather, it appears that Defendant's *speculation* (emphasis on that last word) that their business would grind to a halt is similar, in terms of logical fallacy, as many of the arguments that homophobic people make to justify the non-recognition of same-sex marriage.  You know the arguments I am talking about, right?

- Legalizing SSM would cause heterosexual divorce rates to skyrocket.

- It would cause a dramatic change in lifestyle.

- Churches would loose their tax-exempt status due to their refusal to perform same-sex marriages.

And a variety of other ridiculous and speculative claims.  These arguments are quite fallacious due to the reams and reams of evidence of these consequences *not* happening in places where same-sex marriage is legal (such as Massachusetts, Vermont, and Canada).

Defendant's argument about commerce "grinding to a hault" is similarly fallacious, due to the fact that consumers have had to put up with this for years, and consumerism has not "ground to a halt;" rather, consumers just *adapted* to it, something Defendant does not deny being capable of doing.

Defendant's argument is made even more fallacious by the fact that Defendant either has, or can easily afford, literally a small army of full time employees to do nothing but read and respond to customer emails such as this one.  Requiring customer service representatives to do this would only require a small amount of additional on-the-job training.

Besides, despite Defendant's claims, it would not be required to "sort through" millions of contracts "unique" to each consumer.  Given the fact that Defendant has total bargaining power,

they can easily simply cancel without discrimination any Xbox Live accounts where the consumer attempts to do this, without even bothering to read below the first paragraph, and would enjoy virtual economic impunity, due to their bargaining power.

Even if they wanted or were required to systematically sort through each of them, that still does not help Defendant.  Microsoft can also easily raise the funds they need by increasing the cost of an Xbox Live subscription from $50 per year to $60 per year.  At that point, it would still be reasonably priced (the equivalent of a single Xbox 360 video game), but at 2 million Xbox Live subscribers, would rake in an additional $20,000,000.00 in revenue, with which Defendant can hire well over a thousand minimum wage-earning full time customer service representatives to exactly this.  In fact, I think the government would like that, as it would create jobs, something the government itself seems pathetically incapable of doing.

Of course, Defendant makes a net income of well over $23 billion per year (and that is *after* all the taxes are paid), so raising the price should not even be necessary in the first place.

**It is illusory and unconscionable to allow Defendant, but not me, to do this.**

Defendant also argues that there is a difference between what I do and what Defendant does because the original Xbox Live contract allows them to unilaterally amend the terms of service, but does not extend this same courtesy to me.  However, I have already addressed this issue in my motion for judgment on the pleadings.  Because Defendant has ignored this argument, it is admitted by default under CR 7(b)(2).  However, for the sake of reminding the Court, here it is again:

> "       Even assuming that the Terms of Service granted Defendant the right to unilaterally modify the terms of service, for Defendant to argue that the contract does not extend that same right to me would be unconscionable.
> "       It is one thing for Microsoft to have sufficient bargaining power that they can reject with impunity any contract offers that I submit to them. However, to contractually forbid me from even *attempting* it in the first place, while still

reserving that right to them, is plainly unconscionable, and also causes the contract to lack mutuality of obligation. Therefore, a contractual obligation interpreted in such a way should not be enforceable as a matter of public policy."

## Conclusion

In conclusion, Defendant has failed the challenge that I gave to it:  To actually cite a *difference* between what I am doing and what Defendant and other similarly situated corporations often do.  The closest thing they came up with to any kind of difference has already established as insufficient in my motion for judgment on the pleadings.  Therefore, the motion for sanctions should be granted.

By  /s/ David A. Stebbins  
David Stebbins  
8527 Hopewell Rd,  
Harrison, AR 72601  
870-743-4386  
stebbinsd@yahoo.com
