UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

DAVID STEBBINS                                                                              PLAINTIFF

VS.                                             CASE NO. 11-1362

MICROSOFT CORPORATION                                               DEFENDANTS

### REPLY SUGGESTION TO MOTION FOR JUDGMENT ON THE PLEADINGS

Comes now, *pro se* Plaintiff David Stebbins, who respectfully submits the following Reply to [26] Defendant's Response to Motion for Judgment on the Pleadings.

**Many things are admitted by default.**

Defendant's Response was only three pages long, excluding the certificate of service. Defendant failed to comment on a number of issues raised in [19] Motion for Judgment on the Pleadings. Therefore, the merits of these issues are admitted by default. See CR 7(b)(2), ("If a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit.").

The issues which Defendant failed to comment on, and have thus admitted to by default, are the following:

1. This issue is ripe for an immediate decision, notwithstanding any disputes of material fact.
2. Defendant has admitted by default, pursuant to FRCP Rule 8(b)(6) (rather than CR 7(b)(2)) that all essential elements of a contract except acceptance and consideration are present in this case, and has similarly waived all affirmative defenses to a contract.
3. The Uniform Arbitration Act is a valid legal authority to use in this case.
4. The Uniform Arbitration Act clearly states that Defendants are time-barred from challenging the arbitration awards on *any* grounds.

5. The strong public policy guiding the statute of limitations, lachess, and *qui tacet consentire videtur*, is an equally compelling reason for holding the Defendant time-barred in this case.

6. Defendant's challenge to the existence of an arbitration agreement and challenge to the forfeit victory clause – coupled with the simultaneous failure of the Defendant to claim that the award was obtained by "undue means" or the rights of the parties were prejudiced – caused Defendant to loose automatically, via the *Hayhurst* precedent.

7. The arbitrator, not the Court, must decide the validity of the forfeit victory clause.

8. Defendant, not Plaintiff, holds the burden of proof in this case.

9. The contract needs no consideration to be binding.

All of these issues are admitted in my favor, by default.

## The first motion for judgment on the pleadings was stricken on procedural, not meritorious, grounds.

Defendant seems to have this delusion that my first motion for judgment on the pleadings (Dkt 19) was considered frivolous by this court because of the arguments I raised. If Defendant took two minutes to actually *read* the motion and order striking it, however, it would find that the motion was actually stricken on procedural grounds.

It was not stricken because the time-barred argument was frivolous. No, it was stricken for being an *ex parte* motion that was not allowed to be heard *ex parte*, due to a novel argument I made about the extension of law. Notice how the order striking it reads "Plaintiff has demonstrated sufficient familiarity **with the rules of civil procedure** to know that this motion is frivolous."

Therefore, although the motion was stricken, it was stricken without prejudice as to the merits of the motion.

In fact, the law clerk who denied my first motion for default even praised over the phone how creative I was with my case, and admitted that sometimes, people knew they were wasting the Court's time, but since I *was not one of them*, he did not want me to think that the Court would always side with Microsoft, just because they wanted to, and not because that is what the law requires.  Yes, those were his exact words.

I hope this tells the Defendant that this case is not going to be as easy pickings as they initially thought.

**The Miles case found the existence of an arbitration agreement irrelevant.**

In its Response, Defendant claims that the Washington Court of Appeals "denied an untimely challenge to an arbitration award only because '[a]n arbitration agreement did indeed exist.'"  This, however, is baloney.  The phrase upon which Defendant relies is taken entirely out of context.  The phrase only appears once in the entire opinion, and the paragraph that it appears in begins with the words "MBNA responds."

Due to the fact that the phrase upon which Defendant relies only appears in that once single solitary paragraph, that means that the WA Court of Appeals did not hold that as binding precedent, but rather, merely recited the arguments in the parties' briefings, as a court routinely does immediately *before* making its ruling.

Even assuming that this was actually *held* by the Court, and that it was not a mere argument recital, Defendant is clearly wrong in saying that the WA Court of Appeals ruled in MBNA's favor *only* because an arbitration agreement existed.  Rather, even if I have to accept that the validity of the arbitration agreement was actually *held* by the Court – rather than dismissed as moot – it was clearly a co-holding.

Maybe "co-holding" is not the actual legal term (such as *dicta*, which is, indeed, the legal

term, but I don't know the legal term in this case), but the thing that I am thinking of is when a Court has two or more holdings, and just one of the is enough to cause the victorious party to secure victory.  It is usually done by either trial courts or intermediate appellate courts, so as to give the next court(s) additional leverage with which to affirm the decision.

For example, in the case of *Brust v. MBNA America Bank*, the Texas Court of Appeals of the held the following:

1. "The nonexistence of an arbitration agreement is not one of the grounds upon which an arbitration award may be vacated under the FAA." (something I will ***not*** ask this Court to do, in compliance with the Absurdity Doctrine; this is just to prove a point), and also

2. "[A] party seeking to vacate an arbitration award thereunder must do so within three months after the award is filed or delivered."

As you can clearly see from the text of that opinion, both of these holdings were designed to be equally binding on inferior courts.

Similarly, in *MBNA America Bank v. Miles*, even assuming that the WA Court of Appeals held, rather than routinely recited, that an arbitration agreement did indeed exist, they simultaneously held that the time limit for challenging the arbitration award applied, even in the face of such a challenge.  They merely then moved on to state that, even if the time limit did not apply, they would have held that an arbitration agreement existed between the parties.

Therefore, Defendant's argument that the WA Court of Appeals "only" ruled in MBNA's favor because an arbitration agreement existed is just as frivolous as their argument that their assent to a contract absolutely, positively, without exception, *must* be expressive, rather than implied.

If I am wrong on this, and the WA Court of Appeals really did rule that there was, indeed,

an arbitration agreement, then explain this to me:  When Robert Miles took the case to the Washington Supreme Court, he enjoyed the support of a consumer rights organization who filed an *amicus curiae*.  While Robert Miles was *pro se*, the amicus was represented by counsel.  Despite the lack of *pro se* frivolousness (frivolous arguments that routinely come from *pro se* litigants) in the amicus brief, they still argued that the WA Supreme Court should overturn the Appellate Court's decision because they did not believe that the three-month time limit was triggered until there was an agreement to arbitrate.  I am not kidding.  Here, I will attach the amicus brief that was filed in that case as Exhibit A to this Reply, for this Court to review.

      Tell me, if what Defendant argues is true, then the amicus' argument would be irrelevant.  Why would a party that is represented by counsel argue an issue that is clearly irrelevant?  The only explanation is that the Defendant is simply grasping at straws when it claims that the existence of an arbitration agreement was the deciding factor in that case.

      At first glance, you could make the argument that Defendant is also represented by counsel.  However, Defendant also has a financial interest in the outcome of this case, whereas the amicus in the *Miles* case only cared about justice.  The causal connection between a financial interest in a proceeding and bias in the outcome of that proceeding is well established; in fact, it is the archetypal grounds upon which a tribunal (like a judge, juror, or arbitrator) should recuse himself from the case.

      Besides, even assuming Defendant's favor, Defendant has offered nothing in opposition to my arguments that (1) the Uniform Arbitration Act, which offers guidance in this case, plainly states that Defendant is time-barred, and (2) it is the strong public policy favoring the statute of limitations, and not *just* the strong policy favoring arbitration, that should be applied here.  These issues are, therefore, admitted to under CR 7(b)(2).

**Defendant's reservation of unilateral amendment is invalid
unless the right already existed in the first place.**

Even assuming Defendant is not time-barred, Defendant still fails because there is, indeed, an arbitration agreement.

Defendant claims that the original Xbox Live contract – which Defendant claims that I admit to assenting to – gives them permission to unilaterally amend the contract and imply my acceptance merely in my continued use of the service.  Defendant further argues that it is partly because of this provision which sets their actions apart from my actions.

First and foremost, Defendant has not cited – nor can it cite – a single solitary legal authority that actually states that a contract cannot be unilaterally amended without an express contractual provision allowing them to do so, despite Defendant admitting by default that they hold the burden of proof in this case.  At no point did they say anything proving that this is indeed the differentiating factor.

Even assuming that they can show a legal authority to that end, this provision cannot be enforced, as a matter of public policy, unless common law already recognizes in the first place that acceptance to a contract can be amendment manifested in the other party's continued use of the service.

There are many things are put in contracts that already exist in common law, simply because contracts are easier to prove in court.  For example, a fighter signing up for a boxing or MMA tournament might sign a contract agreeing to sue neither the company, nor the other fighters, for any injuries he sustains while participating in the tournament.  However, although that waiver is in the contract, it does not have to be, as common law will probably recognize an assumption of risk on the part of the fighters; the waiver is merely there to expedite that process.

By contrast, there are some things that a court will not enforce, even if it is part of a

contract.  For example, if my wife begs for my forgiveness for her adultery, I might write up a contract agreeing to call off the divorce, but in return, if she ever cheats on me again, I have the contractual right to kill her.  No court would enforce consideration such as that, with or without the peppercorn rule (or, at least, no English-speaking court would do that).  Maybe (and even this is a novel issue in this nation's jurisprudence, so I emphasize the "maybe" here), her estate might be bound by the waiver when in a wrongful death suit, but even that is pushing it.

On that same vein, as a matter of public policy, all essential contract elements must be present in all contracts.  It would be a terrible smack in the face of contract law for one party – especially one with no bargaining power – to waive the requirement for any essential contract elements in any future contracts between that same pair of parties.

Defendant claims that the original Xbox Live contract gives them the right to unilaterally amend the terms of service with only my implied – rather than express – consent.  In doing so, they clearly imply that such a right does not exist at common law.  However, if this Court were to adopt its policy, it would open the floodgates for a ton of other abuse.  What is next?  Does a consumer waive its right to even be *notified* of the new contract?  After all, if a consumer can waive the requirement of acceptance, what is there to stop it from waiving the requirement that there be an offer, or that the offer be communicated to the offeree?

Can a consumer agree to accept another contract in the future, without being told what the next contract is?  I know, sometimes, people agree to "return the favor," and might agree blindly to do a favor in the future, but as I understand it, these contracts are hardly binding in a court of law.  After all, you're essentially signing away your right to not accept the contract (e.g. your right to reject it), and you are agreeing blindly to simply accept whatever it is that the other person agrees to.

Would an American court enforce a contract that waives the requirement that there be a meeting of the minds?

The only way that Defendant's provision can be enforceable, as a matter of public policy, is if it merely recited a method of accepting a contract that already existed in common law.

Another way to look at it is like this: Consideration must be *legal*. A Court will not enforce contractual consideration unless it is legal to do that thing in the first plae, with or without a contract. It is legal to not sue an MMA fighter for assault and battery you sustained in a tournament, but it is not legal to kill a person. A Court will enforce the first consideration, but not the second one. Likewise, Defendant's contractual provision allowing it to unilaterally modify the Xbox Live contract is not legal unless the right already existed in the first place.

At that point, the Defendant's argument falls apart at the seems. It then becomes the responsibility of the contract drafter to expressly *forbid* one party from unilaterally amending the terms, rather than expressly *allow* one party to do so. The Xbox Live Terms of Use, which Defendant provides as an exhibit, fails to expressly forbid this. Therefore, I still have the right to give Defendant a taste of its own medicine.

Of course, even assuming that Defendant did do this, like it claims, that provision cannot be enforced. I already addressed this on Page Four (4) of my Reply to Defendant's Answer to my Motion for Sanctions (Dkt 28). Please refer to that document, as I do not wish to bore this Court with redundant details.

In its Response to this Motion (Dkt 26), Defendant argues that to allow consumers to do what Defendant does on a regular basis would cause their business to "grind to a hault." I have also already quelled this argument in my Reply to Response to Motion for Sanctions (Dkt 28), this time on Page Two (2) of that document.

**The validity of the forfeit victory clause is unopposed.**

Defendant relies heavily on the fact that no traditional arbitration ever took place. Defendant, in this argument, essentially claims that the forfeit victory clause is unenforceable, because, assuming the forfeit victory clause to be enforceable, then the arbitration and arbitration award were perfectly compliant with it.

However, notwithstanding the obvious prerequisite that the forfeit victory clause must be unenforceable before Defendant can argue that no arbitration award exists, Defendant still stubbornly refuses to cite even one single solitary authority explaining exactly *how* the forfeit victory clause is unenforceable, even though I have cited several arguments for allowing it. Allow me to summarize the arguments that I have raised, which Defendant has failed to oppose:

- The forfeit victory clause is merely a change to arbitration procedure (Defendant even admits, in its motion to dismiss (Dkt 16) that the forfeit victory clause is a "unique *procedure*"), and the arbitrator, not the Court, decides arbitration procedure.
- The UAA expressly allows for the parties to waive the requirement that an arbitration award be in writing and signed by the arbitrators joining in the award.

Furthermore, here are a couple of new arguments that I have in support of the enforceability of the forfeit victory clause. If Defendant wishes to challenge these in a surreply, I would understand.

First, would this Court enforce an arbitration award made pursuant to AAA's default rules that contained a specific performance requiring the Defendant to adhere to the new contract in its entirety, including the forfeit victory clause as written? If you would answer "yes" to that question, you would then admit that the arbitrator has jurisdiction to determine the enforceability of the forfeit victory clause, which at that point would deprive this court of subject-matter

jurisdiction over it.  The case law surrounding the FAA clearly shows that the arbitrator either has no jurisdiction or exclusive jurisdiction over a certain issue, but never concurrent jurisdiction.

Secondly, in the case of *C & L Enterprises, Inc. v. Citizen Band, Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411 (2001), the United States Supreme Court justified its holding that an arbitration clause constituted a waiver of sovereign immunity on the grounds that the AAA's Rules allowed for the award to be confirmed and enforced in a court of competent jurisdiction. In other words, when an arbitration agreement names an arbitration firm, that firm's rules are incorporated by reference into the arbitration agreement itself.

Furthermore, in the case of *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772 (2010), the Supreme Court essentially held that, in that case, there were *two* arbitration clauses, one stating that the arbitrator decided the other arbitration clause, and the other arbitration clause was for everything else.  The Supreme Court then went on to state that the District Court could only decide the validity of the first arbitration clause, but not decide both, simultaneously.

The challenge to the validity of the forfeit victory clause assumes that the contract is otherwise valid.  Therefore, the *C & L Enterprises* case causes Section R-7(b) of the AAA Commercial Rules to become incorporated into the contract by reference, thus giving the AAA the authority to decide the validity of the forfeit victory clause, something that the *Jackson* case compels this court to respect.

**These arguments assume that Defendants are not time-barred, which they are.**

Considering that I have a few pages to spare, I wish to re-emphasize that my argument as to the existence of an arbitration agreement is only even relevant to this Court if the Defendant is not time-barred.  Defendant claims that the precedent-setting case of *MBNA America Bank v.*

*Miles* only affirmed the trial court's confirmation of the arbitration award because there was an agreement to arbitrate.  However, any moron – even a non-lawyer – who reads that opinion can tell that they held first and foremost that Robert Miles was ***time-barred*** from challenging the award, even on the basis of the nonexistence of an arbitration agreement.  You would literally have to be a small child to actually think that the WA Court of Appeals' declaration that "[a]n arbitration agreement did indeed exist" was not either a mere recital of MBNA's argument, a mere *dicta*, or (even if directly binding) a co-holding.  I think the Defendant knows that, but just does not want to fess up.

Simply put, regardless of the level of importance you put on the WA Court of Appeals' declaration of the existence of an arbitration agreement, the bottom line is that the binding precedent (even if it is not the only binding precedent from that case, it is one of them) unequivocally states that Defendant is time-barred from challenging the arbitration award, even on the nonexistence of an arbitration agreement.

Defendant's statement to the contrary is merely hoping against hope.  From a logical fallacy standpoint, it is like arguing that the case of *Hall Street Associates, L. L. C. v. Mattel, Inc.*, 552 U.S. 576 (2008) only rejected general legal review of arbitration awards, and that the other non-statutory grounds for vacture that they rejected were merely *dicta*.

Even assuming otherwise, the UAA and SoL arguments are still unopposed.  I do not believe they can oppose them, either, because if they could draft any sort of decent counter-argument against these arguments (or even a half-baked one, like the one they spat out regarding the Miles case), they would have.

### Conclusion

In Conclusion, Defendant is left without a single, solitary defense.  The only explanation

left is their own hypocrisy and their own negligence.

  Wherefore, premises considered, I respectfully pray that the Motion for Judgment on the Pleadings be granted.

*By /s/ David A. Stebbins*
David A. Stebbins
8527 Hopewell Rd,
Harrison, AR 72601
870-743-4386
stebbinsd@yahoo.com
